

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

Eastern District of Kentucky
FILED

DEC 15 2006

AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

CIVIL ACTION NO. 06-50-GWU

ANITA PETERSON, PLAINTIFF,

VS. **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY, DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of her application for Supplemental Security Income (SSI). The appeal is currently before the Court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1. Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2. Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3. Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to Step 4. If no, the claimant is not disabled. See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

1

Peterson

4. Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).

5. Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6. Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled. If no, proceed to Step 7. See 20 C.F.R. 404.1520(e), 416.920(e).

7. Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply. Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to

2

support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1)

3

whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford

Peterson

or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning a specific step in the test is in order.

In the Sixth Circuit, the Step Three severity regulation has been held to be a de minimis hurdle in the disability determination process. Murphy v. Secretary of Health and Human Services, 801 F.2d 182, 185 (6th Cir. 1986). An impairment can be considered not severe only if it is a "slight abnormality that minimally affects work ability regardless of age, education, and experience." Farris v. Secretary of Health and Human Services, 773 F.2d 85, 90 (6th Cir. 1985). Essentially, the severity requirements may be used to weed out claims that are "totally groundless." Id., n.1.

## DISCUSSION

The plaintiff, Anita Peterson, filed an application for SSI with an alleged onset date of May 15, 2002. (Tr. 67-8).[1] After hearing the plaintiff's testimony and reviewing the evidence submitted, an Administrative Law Judge (ALJ) found that, while Mrs. Peterson had medically determinable impairments of hyperlipidemia, poorly controlled hypertension, and depression, these conditions did not appear to limit her functioning more than minimally. (Tr. 22). Therefore, he determined that she did not have a "severe" impairment, and terminated the sequential evaluation

---

[1] Although the plaintiff testified that her name is spelled "Petersen" (Tr. 580), her attorney filed the complaint with the spelling of "Peterson."

Peterson

process at Step Three of the Garner analysis. (Tr. 22-3). The Appeals Council declined to review, and the plaintiff appeals.

At the administrative hearing before the ALJ on April 16, 2004, Mrs. Peterson testified that she had stopped working in her day-care job in 2002 because of depression, nervousness, and high blood pressure problems. (Tr. 583). She had been hospitalized in February, 2004 due to these problems, especially suicidal thoughts of taking an overdose, and had been given counseling and medications. (Tr. 587, 591). She thought she had had one follow-up appointment at the Comprehensive Care Center (CCC), and was getting medications from a psychiatrist, Dr. Raza, including Lexapro, Trazodone, Doxepin and another medication. (Tr. 595). She did not currently have any suicidal thoughts (Tr. 592) but was still having crying spells every other day, did not like going out in public because of nervousness, and had difficulty staying in stores and church due to this problem. (Tr. 587-9).

Also at the hearing, the plaintiff's attorney and the ALJ discussed the available treatment notes from Mrs. Peterson's psychiatric hospitalization. The ALJ noted that a Discharge Summary was not available, and suggested that the attorney request a copy. (Tr. 594, 603).

The intake assessment was available, and showed that the plaintiff was diagnosed as having "severe" major depression "recurrent type," with a Global

6

Peterson

Assessment of Functioning (GAF) score of 30 by Dr. Syed Raza. (Tr. 488-9). A GAF score of 30 reflects serious impairment. <u>Diagnostic and Statistical Manual of Mental Disorders</u> (Fourth Edition-Text Revision) (DSM-IV-TR), p. 34. When the discharge summary was received on May 7, 2004, it showed that the plaintiff had responded well to the hospital stay, and to individual psychotherapy sessions, and had been discharged on Prozac and Trazodone to follow-up at the CCC. (Tr. 544). Her GAF score was then given as 55. (Id.). A GAF score 55 reflects moderate symptoms or moderate difficulty in social, occupational, or school functioning. DSM-IV-TR, p.34. Two follow-up notes from Dr. Raza dated March 4 and March 12, 2004, were also included in the transcript, although his handwriting was almost illegible. (Tr. 490-1). They do indicate that the plaintiff was not having any suicidal or homicidal ideations and appeared to be tolerating her medications well.

The ALJ discounted Mrs. Peterson's credibility concerning her crying spells due to inconsistencies in her testimony (Tr. 20), and also noted that the plaintiff testified that she was able to help at her church with the youth, and serve as an usher, and was able to talk on the telephone (Tr. 20, 597-8, 600). He stated that there was no evidence of any follow-up with the CCC, and did not mention the Discharge Summary. (Tr. 21).

Given the <u>de minimis</u> hurdle of the Step Three severity regulation under Sixth Circuit case law, <u>e.g.</u>, <u>Murphy v. Secretary of Health and Human Services</u>, 801 F.2d

7

Peterson

182, 185 (6th Cir. 1986), which may be used only to weed out claims that are "totally groundless," Farris v. Secretary of Health and Human Services, 773 F.2d 85, 90 (6th Cir. 1985), it was error to find that the plaintiff had no "severe" mental impairment. A treating source had assessed the plaintiff as having, at best, moderate difficulty in social, occupational, or school functioning, and there is no evidence from any treating, examining, or reviewing source to the contrary. Whatever may be said about duration of the impairment, the ALJ's failure to discuss the discharge GAF score or to recognize that the plaintiff was receiving follow-up treatment after her psychiatric hospitalization requires a remand for further consideration of this condition.

The plaintiff also submitted evidence to the Appeals Council, and while it cannot be considered for purposes of determining whether the ALJ's decision was supported by substantial evidence, it can be considered along with any other new evidence on remand.

The decision will be remanded for further consideration.

This the _15_ day of December, 2006.

G. WIX UNTHANK
SENIOR JUDGE